SCANNED at PENDLETON and Emailed on 9/24/19 by KS - 14 pages. (date) (initials) (num)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
3:22 pm, Sep 25, 2019
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Laura A. Briggs, Clerk

| | |
|---|---|
| CHRISTOPHER M. MACY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Cause No:1:19-cv-03294-JPH-MJD |
| | ) |
| ROBERT E. CARTER, Commissioner of IDOC | ) |
| DUSHAN ZATECKY, Warden | ) |
| DUANE ALSIP, Assistant Warden | ) |
| Defendants. | ) |

### FIRST AMENDED PRISONER COMPLAINT 42 U.S.C. 1983 AND DEMAND FOR JURY TRIAL

#### I. INTRODUCTION

1. This is a 1983 action filed by Plaintiff Christopher M. Macy a State prisoner, by counsel, alleging violations of his constitutional rights to receive adequate medical care and treatment, and is seeking injunctive relief and monetary damages.

#### II. JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1983 in that this is a civil action arising under the Constitution of the United States of America.

#### III. PARTIES
#### A. PLAINTIFF

3. Plaintiff Christopher M. Macy at all times relevant was confined by the Indiana Department of Corrections at the Pendleton Correctional Facility, 4490 W. Reformatory Road, Pendleton, Indiana 46064.

1

## B. DEFENDANTS

4. Defendant, Robert E. Carter, is an employee of the Indiana Department of Correction and the Commissioner of the Indiana Department of Correction, at all times relevant to the 22nd day of July, 2019, to provide adequate safety and security for the facilities in the State of Indiana, specifically, Pendleton Correctional Facility as well as all the facilities in the.

5. Defendant, Dushan Zatecky, is an employee of the Indiana Department of Correction and the Warden at the Pendleton Correctional Facility at all times relevant to the 22nd day of July, 2019, to provide adequate safety and security of the facility, Pendleton Correctional Facility.

6. Defendant Duane Alsip, is an employee of the Indiana Department of Correction and the Assistant Warden of Operations of the Pendleton Correctional Facility, at all times relevant to the 22nd day of July, 2019, to provide adequate safety and security of the facility, the Pendleton Correctional Facility.

## IV. EXHAUSTION OF AVAILABLE REMEDIES

7. Exhausted of State remedies as to fulfill the burden per ***Ross v Blake***, 136 S. Ct. 1850, 1860; 195 L. Ed. 2d 117 (2016) U.S. LEXIS 3614, that remedies that rational inmates {136 S. Ct. 1860} cannot be expected to use are not capable of accomplishing their purposes and so are not available"). Accordingly, exhaustion is not required.

8. At {**195 L. Ed. 2d 128**} specifically states that prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

## V. FACTUAL ALLEGATIONS OF PRISON OVERCROWDING

### A. DOUBLE BUNKING

9. Administrators, Dushan Zatecky, Duane Alsip as well as other have undertaken substantial steps in double bunking multiple dormitories contained within the facility.

2

10. That these dormitories for which they inspected, measured and contacted the head supervisor of the maintenance department of the facility are, but not limited to, L-Dorm and O-Dorm.

11. That the facility is currently over the population of 1800 plus men.

12. Administrators are looking to add an additional:

    a. fifty (50) bunks to the Honor Dorm, L-Dorm, by double bunking, from which only has 4 operating toilets, 4 urinals, 7 showers, 9 sinks;

    b. Undisclosed number of bunks to upper O-Dorm by double bunking, which currently has 7 eight man dorms with only 2 toilets, 0 urinals, 1 showers, 2 sinks in each;

13. Those additional inquiries have under gone into the IRT units as well as other units but disclosed to the population at this time.

14. That these units contain inadequate facilities (toilets, sinks and showers) to the men whom live there.

15. That all areas of housing are unsanitary in that the men are not given adequate chemicals and or supplies to properly clean these common areas some of which are un-cleanable.

16. That L-Dorm specifically has just had to power wash the bathroom from mold that covered the ceiling as well as an addition two (2) feat down the walls caused by no circulation and or ventilation of air.

## B. MEDICAL CARE

17. That due to the overcrowding, the lack of medical services has come to an all-time low with the number of civil suits against Wexford of Indiana, LLC, under the care and direction of Doctor Paul Talbot, rising to an all-time high.

18. Critical medications are constantly not being properly ordered on time leaving the patients without medication for his condition and or conditions for months at a time.

19. Denial of almost all critical services from medical during facility lock downs including, but not limited to, transfers to outside medical appointments, surgeries, sick calls requests, medication refills, medication deliveries, ect.. ect..

20. That the nursing staff was only addressing those patents that required insulin shots, and on numerous occasions, was not even addressing them from which denied those patents their insulin.

21. That medical department had to institute an additional day of lockdown after the facility released for the purposes of *"catching up"*.

22. That as a result, medical staff had diabetic inmates report to the *DINNING HALL* to implement the insulin shot from which the medical staff did not changes gloves between one inmate to the next, and, through the blood soaked cotton balls, band aids and other items on the floor of the dinning hall.

23. Denial of surgeries is constantly being denied.

24. That there is an overwhelming number of committed persons that have suffered, but not limited to, cancers, joint replacements, hernias as well as other injuries from which have gone years without proper treatment that have put the patient's life in danger and without proper care while suffer extreme pain and suffering.

25. That many of these cases are life threating.

26. Denial and or lack of proper identification of Tuberculosis, Hepatitis, Mercer and Staff infections from which staff would leave the prisoner in the common area instead of quarantine that person, thus contaminating other prisoners around that prisoner.

4

27. That the denial of timely identification of diseases and infections as well as untimely delivering of medication, surgeries and common sick calls is a common practice for the purpose of saving money.

## C. SAFE and HEALTHFUL ENVIRONMENT

### 1) STAFF SUPERVISION

28. That Pendleton Correctional Facility has been and is currently greatly understaffed by well over one hundred personnel per shift.

29. That due to the overcrowding, the facility currently must close down and or not run certain facility functions due to the shortage of staff. That the most common closings include, but not limited to, recreation and visitation.

30. This also allows more frequent and more violent interactions of the prison population that also has grown exponentially.

31. Those many suicides have gone undetected until long after the person has deceased.

32. Suicide attempts as well as other mental illnesses are also unprecedented in numbers at this time that also leads to violent encounters.

### 2) COLLAPSING, DISREPAIR and SANITATION OF BUILDINGS

33. That the facility passes out to the housing units, work units, as well as all relative areas of the facility, chemicals and materials for sanitation purposes.

34. That these chemicals and materials are inadequate for sanitizing the areas needed.

35. That the buildings themselves in many cases are unable to be properly cleaned regardless of chemicals used.

### 3) FOOD SERVICES

#### i. nutritional value of the food

36. Food services fail to meet the nutritional value needed for grown men, as required by the business contract between the Indiana Department of Corrections and Aramark Food Serv.

37. That the facility starts feeding breakfast at three (3) am in the morning with lunch starting at nine (9) am and dinner starting at three (3) pm, leaving over twelve hours before the next possible meal.

38. That most men in the working areas of the facility do not go to the morning breakfast in that it is served at three to four in the morning leaving the men with no means of any real rest prior to reporting to their job assignment from which starts at just prior of six (6) am to seven (7) am.

39. That the dinner meal, Sunday thru Saturday, starting October 7, 2019, is that of only a sack lunch that generally consist of four (4) slices of bread, one slice of processed meat, one once of jelly peanut butter mix, one cookie, one powdered drink mix for eight oz. of water, and a condiment of either mustard or mayonnaise.

40. That the nutritional value is not adequate enough for grown working men to sustain themselves on, and barely enough for those who are not allowed out of their cells to survive.

#### ii. Service of Food

41. That the facility delivers food to many of the units in the facility.

42. That the food is not transported in hot carts but rather put in plastic of foam trays and put on flat bed roll around carts, left on that cart for extended periods of time, then delivered to the units where staff is tasked to delivering the trays themselves often times past the expired time limit of four hours.

43. That during the lockdown period, trays would have produced and ready for the units by eleven (11) am but not delivered to the inmate as late as one (1) pm to two (2) pm.

44. That during this period of time the trays were never heated back up for the inmates.

### iii. Sanitation of Food

45. That the kitchen must utilize large scale equipment to be able to feed the masses of the facility. That these items may include, but not limited to, kettles, large mixing utensils, rolling work stations as well as others.

46. That there are no methods and or procedures that able those cleaning these services to properly sanitizing the equipment.

47. That the facility has also assigned one Sporks and two eight once cups to each prisoner located in the facility, so that the prisoner can bring those utensils with the prisoner to the dining hall in order for that prisoner to be able to eat.

48. That in assigning these items to the population, the facility has taken any and all means of properly sanitizing these utensils in that the population is not allowed chemicals to do so on his own.

49. Furthermore, rodents, roaches, spiders as well as others unsanitary critters roam day and night in the areas from where the food is kept and prepared.

50. If chemicals are used, they are used in a fashion that would contaminate the food and items to prepare the food.

### D. GRIEVANCE PROGRAM

51. That the Indiana Department of Correction has changed the Grievance policies of 00-02-301.

52. That the standing policy requires that the informal stage as well as the formal stage of the grievance to be completed within ten (10) working days from the time of the incident.

53. That the key and relevant changes made to policy 00-02-301 is:

    a. The informal grievance form specifically designed for the purpose of the grievance, that also had tracking abilities as well as accountability of staff has been completely eliminated.

    b. Prisoners now are only allowed to fill out a *"Request for Interview"* form, despite that the policy only states that the offender needs to provide proof of an informal resolution, (i.e., to/from correspondence, a request for interview slip) so that if an offender physically talks to the staff about the situation and places this in the grievance, the grievance officer still refuses to accept, and file the grievance, as means of the informal grievance stage from which does not go through the grievance specialist, AND, has no accountability of staff leaving the prisoner with no way to establish and or prove that he attempted the informal stage *if* the responding staff fails and or refuses to address the *"Request for Interview'* form.

54. That if and when the prisoner files a grievance, the grievance specialist works to find error with the complaint in order to keep the grievance from being filed rather than resolve for the purpose of preventing court litigation.

55. That the blockading of the grievance program violates Ross v Blake, 136 S. Ct. 1850, 1860; 195 L. Ed. 2d 117, 2016 U.S. LEXIS 3614 by making the grievance policy and or the State Remedy unavailable.

56. That for all the reasons mentioned in section V., A. through E., in the overall conditions of this facility, the attempted murders, suicide attempts, suicides, and over all violence has grown exponentially with no signs of relief and or reduction.

57. Furthermore, that facility is in, and has been in, violation of the Courts Order found in French v Owens, 538 F. Supp. 910, 1982 U.S. Dist. LEXIS 12227 (S.D. Ind. 1982) and French v Owens, 777 F2d 1250, US Ct. App. 7th Cir. (1985)

## VI. **CAUSE OF ACTION**

## **DEFENDANTS VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION**

### ARTICLE VII

58. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

59. Defendant, Robert E. Carter, acted in both its individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by ordering and or allowing Pendleton Correctional Facility to be (A) Over Crowded by double bunking, (B) inadequate medical care, (C) safe and healthful environment, and (D) grievance procedure issues which caused Plaintiff the unnecessary and wanton infliction of pain and suffering. Robert E. Carter was deliberately indifferent to Plaintiff's serious needs.

60. Defendant, Dushan Zatecky, acted in both its individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by ordering and or allowing Pendleton Correctional Facility to be (A) Over Crowded by double bunking, (B) inadequate medical care, (C) safe and healthful environment, and (D) grievance procedure issues which caused Plaintiff the unnecessary and wanton infliction of pain and suffering. Robert E. Carter was deliberately indifferent to Plaintiff's serious needs.

61. Defendant, Duane Alsip acted in both its individual and official capacity under color of state law to deny Plaintiff of his constitutionally protected rights by ordering and or allowing Pendleton Correctional Facility to be (A) Over Crowded by double bunking, (B) inadequate medical care, (C) safe and healthful environment, and (D) grievance procedure issues which

caused Plaintiff the unnecessary and wanton infliction of pain and suffering. Robert E. Carter was deliberately indifferent to Plaintiff's serious needs.

62. The "Deliberate Indifference" to adequately treat Plaintiff's serious medical needs caused the unnecessary and wanton infliction of pain and suffering proscribed by the Eighth Amendment. See *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.")

63. The Eighth Amendment protects prisoners from cruel and unusual punishment. Prisoners who are denied adequate medical care in state or local institutions may use 42 U.S.C. § 1983 to sue prison medical providers, including private contractors. See *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250 (1998).

64. Since prisoners cannot obtain their own medical services, the Constitution requires prison authorities to provide them with "reasonably adequate" care. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979); see *Langly v. Coughlin*, 888 F. 2d 252, 254 (2nd Cir. (1989) (Officials must provide necessary medical care . . . Which would be available to [Prisoner] if not incarcerated").

65. Courts have defined "adequate" medical services as " services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards, and as "a level of health services reasonably designed to meet routine and emergency medical, dental, and psychological or psychiatric care. *Tillery v. Owens*, 719 F. Supp. At 1301.

11

66. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a law person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. ***Gutierrez v. Peters***, 111 F. 3d 1364, 1373 (7th Cir. 1997)

67. Robert E. Carter, Dushan Zatecky, Duane Alsip, were made aware of the serious deprivations y the Plaintiff on numerous occasions and failed to address those serious issues, causing Plaintiff to suffer permanent injury and chronic and substantial pain.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests that this Honorable Court grant the following relief:

A. To issue an ORDER requiring the Defendants to:

1. Provide Plaintiff with housing free from overcrowding in the future to avoid undue harm, pain and suffering;

2. Provide Plaintiff with proper health care while maintaining a health environment free from disease and infectious diseases in the future to avoid undue harm, pain and suffering;

3. Provide Plaintiff with up kept sanitized housing free from overcrowding conditions in the future to avoid undue harm, pain and suffering;

4. Provide Plaintiff with adequate nutritional value of food free from the un-sanitized conditions in the future to avoid undue harm, pain and suffering;

5. Provide the Plaintiff with an updated grievance policy the reestablishes, tractability of informal grievances, staff accountability of those grievances, with direction and action as to not use the grievance process as a blockade to the courts.

B.  Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States;

C.  Order the defendants to pay compensatory and punitive damages for the pain and suffering Plaintiff experienced as a result of the Defendants deliberate indifference to Plaintiff's serious medical need;

D.  Grant all other just and equitable relief that this Honorable Court deems just and proper.

Respectfully submitted,

CHRISTOPHER M. MACY

**CERTIFICATE OF SERVICE**

I hereby certify that on this <u>24</u> day of <u>September</u>, 2019, I electronically filed the amended foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Indiana Department of Correction
Robert E. Carter, Jr. Commissioner
302 W. Washington St., Room E334
Indiana Government Center – South
Indianapolis, IN. 46204-2738

Dushan Zatecky
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton In. 46064

Duane Alsip
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton In. 46064

Christopher M. Macy
Plaintiff, Pro Se
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton In. 46064